516 A.2d 758

**COMMONWEALTH of Pennsylvania**

v.

**Arthur SATZBERG, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 3, 1986.

Filed Oct. 23, 1986.

Dennis H. Eisman, Philadelphia, for appellant.

James C. Dalton, Assistant District Attorney, Doylestown, for Com., appellee.

Before WICKERSHAM, OLSZEWSKI and BECK, JJ.

OLSZEWSKI, Judge:

Appellant, Arthur Satzberg, was convicted of theft by unlawful taking, receiving stolen property, and related offenses by a jury in the Court of Common Pleas of Bucks

County. Post-verdict motions were filed and denied. Appellant was sentenced to two years' probation and restitution, and now appeals the judgment of sentence to this Court.

Three separate issues are raised in this appeal: first, whether the trial judge, the Honorable Kenneth G. Biehn, should have ordered a hearing before another judge when appellant filed a recusal motion alleging prejudicial conduct by Judge Biehn; second, whether the trial court improperly denied appellant's request for a new trial based on after-discovered evidence; and third, whether the prosecutor's references to appellant's character and drug use should have resulted in a mistrial. Though affirming the trial court's holding on the first two issues, we disagree with the trial court's holding that the prosecutor's remarks concerning appellant's drug use did not cause prejudice sufficient to grant a mistrial. We therefore reverse and remand this case for a new trial.

Before addressing the legal issues raised by the case, a brief recital of the facts is necessary. In late 1980, appellant and Joel Katz, his cousin and business partner, established a scrap metal business, the International Metals and Refining Corporation. Each partner contributed assets to the new corporation, though the bulk of the assets and equipment came from Katz's former scrap metal business. Industrial Valley Bank of Philadelphia financed the fledgling corporation by providing loans totaling approximately $250,000.

During the next several years, the corporation did not prosper. According to witness testimony, the corporation during its first two years made only enough to pay its creditors. Indeed, early in 1983 the appellant and Katz discussed the possibility of liquidating the corporation to pay off the bank loans. In March 1983, while Katz was vacationing in Florida, the appellant removed all of the corporate assets, equipment, and records from the premises of the business; and he has never revealed the location of these items. He also subsequently collected approximately

$25,000 in corporate accounts receivable by representing himself as the corporation's agent. The funds, however, were not deposited in the corporation's accounts; rather, the money was deposited in appellant's bank account.

Katz thereafter filed charges against the appellant for theft of property and receiving stolen goods, claiming that appellant was not authorized to act as he did. Though admitting taking the corporate assets and equipment, appellant maintained at his jury trial that he acted only to protect his corporate interests from the effects of Katz's bookmaking activities. In his testimony, appellant stated that he believed Katz's activities would result in their business' destruction, and this belief motivated appellant's actions to minimize his losses. The jury, however, was not persuaded and found appellant guilty of the crimes charged. Following denial of his post-trial motions, appellant filed this appeal.

The first issue appellant raises on appeal is whether the trial judge should have ordered a hearing before another judge when a recusal motion was filed alleging prejudicial conduct by the trial judge. For the reasons stated below, we hold that the trial judge was correct in refusing to transfer appellant's recusal motion to another judge.

In two recent decisions, the Pennsylvania Supreme Court thoroughly discussed when a judge should or should not hear a recusal motion concerning himself. In *Municipal Publications, Inc. v. Court of Common Pleas of Philadelphia County*, 507 Pa. 194, 489 A.2d 1286 (1985), the Court held that when a party in a suit files a recusal motion raising questions as to the judge's impartiality, the judge must transfer the motion to another judge if two conditions are met. First, the judge must be personally knowledgeable about the facts in dispute. Second, he must "permit himself to be a crucial witness in the proceedings." *Id.*, 507 Pa. at 196, 489 A.2d at 1286. The inability of a judge to impartially rule on objections to his testimony or objectively assess his testimony's credibility is the rationale underlying this holding. *Id.*, 507 Pa. at 201, 489 A.2d at 1289. The

Pennsylvania Supreme Court further elaborated on the *Municipal Publications* holding in *Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985). In *Reilly*, the Court stated:

> If the judge feels that he can hear and dispose of the case fairly and without prejudice, his decision will be final unless there is an abuse of discretion ... If the judge wishes a full exposition of the question of unfairness, he may follow the unusual practice of Judge Parker and summon another judge to decide it, but he is not required to do so.

*Id.*, 507 Pa. at 221, 489 A.2d at 1299.

Taken together, the two decisions delineate the proper role of a judge in considering a recusal motion alleging judicial prejudice. Absent an abuse of discretion, the judge may properly decide recusal motions concerning his impartiality if he believes he can adjudicate the case fairly and objectively. A trial judge is bound to excuse himself only when he has personal knowledge of the disputed facts and has decided to testify at the recusal hearing. *Reilly*, 507 Pa. at 221, 489 A.2d at 1299; *Municipal Publications*, 507 Pa. at 196, 489 A.2d at 1286. *See also Reilly*, 507 Pa. at 235, 489 A.2d at 1307 (Hutchinson, J., concurring).

In the instant case, appellant filed a post-verdict recusal motion alleging the judge spoke in a threatening manner to appellant during a settlement negotiation of a civil case arising from the same facts.[1] The trial judge denied the recusal motion, refusing to transfer the motion to another judge for a hearing. Under the standard enunciated in *Municipal Publications* and *Reilly*, the trial judge acted within the bounds of his discretion. Though having personal knowledge of the disputed facts, he did not testify as a witness at a hearing presided over by him. He

---

1. In his brief, appellant states:
   The trial judge, according to the motion to recuse, threatened appellant with seven years in a state prison if he did not resolve this matter, and when the matter was not settled, reiterated this threat.
   Appellant's brief at p. 9.

therefore was neither forced to rule on objections to his testimony nor evaluate his own testimony. *Municipal Publications*, 507 Pa. at 201, 489 A.2d at 1289.

Several other factors also support our finding that the trial judge properly denied the recusal motion. First, appellant was tried by a jury, which exercised the fact-finding responsibility. The integrity of the fact-finding process, consequently, was protected by the jury verdict, especially since the alleged statements by the judge were made prior to the trial. *See Reilly*, 507 Pa. at 225–26, 489 A.2d at 1302. Second, a full review of the record reveals nothing occurred during the trial that would cast doubt on the trial judge's impartiality or objectivity. Last, appellant's counsel failed to make the recusal motion until after the jury verdict was rendered even though the incident mentioned in the motion occurred at a settlement conference prior to trial. In *Reilly*, the Pennsylvania Supreme Court stated, "Once the trial is completed with the entry of a verdict, a party is deemed to have waived his right to have a judge disqualified, and if he has waived that issue, he cannot be heard to complain following an unfavorable result." *Id.*, 507 Pa. at 222, 489 A.2d at 1300. In the present case, appellant's counsel had ample opportunity to make a recusal motion prior to the jury verdict, but he waited until after the jury had found his client guilty. The trial judge, consequently, could have refused to even consider the motion.

The second issue in this appeal is whether appellant's request for a new trial based on after-discovered evidence was improperly denied. We hold that the motion was properly denied since appellant's new evidence does not meet the Pennsylvania standard for after-discovered evidence. The legal standard for granting a new trial is enunciated in *Commonwealth v. Valderrama*, 479 Pa. 500, 388 A.2d 1042 (1978). In *Valderrama*, the Pennsylvania Supreme Court stated:

After-discovered evidence is a basis for a new trial if it: (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by

the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted.

*Id.*, 479 Pa. at 505, 388 A.2d at 1045.

In the present case, appellant asserts new evidence was received regarding the bookmaking activities of Joel Katz,[2] the state's primary witness and appellant's former business partner. Appellant states in his brief that the new evidence would have two important effects: first, Katz's testimony would be impeached; second, appellant's taking of the corporate property would be seen as necessary to protect his corporate interests.

The new evidence, however, does not come within the strict standards of *Valderrama*. At trial, appellant did present evidence about Katz's bookmaking activities to justify appellant's actions. Appellant was aware of Katz's activities, and further diligence by appellant could possibly have led to discovery of the evidence at or before the time of trial. Though appellant's affidavits were executed nine months after trial, they concerned information that was available earlier. The new evidence would also only further corroborate appellant's contention at trial that his actions were intended only to protect his corporate interests from Katz's bookmaking activities. In addition, the new evidence is largely intended to impeach Katz's prior testimony by showing inconsistencies between Katz's testimony and the new evidence. Finally, the new evidence would probably not result in a different verdict since appellant's previous evidence regarding Katz's activities did not persuade the jury.

Appellant's final issue in this appeal is whether the prosecutor's references to appellant's drug use unduly prejudiced

---

**2.** Appellant sought to introduce affidavits of law enforcement officials concerning the extent of Mr. Katz's bookmaking activities during 1982 and 1983. He also sought to present affidavits of attorneys regarding the extent of Mr. Katz's knowledge of police wiretaps on his phones.

him before the jury and should have resulted in a mistrial. We believe appellant was so prejudiced, and therefore believe that appellant must be given a new trial.

During the trial, the assistant district attorney prosecuting the case made two distinct references to appellant's drug use. The first occurred during the prosecutor's opening statement, and the second occurred during the testimony of the state's primary witness. Either standing alone is sufficiently prejudicial to appellant to warrant granting him a new trial.

■■■ An opening statement is meant to inform the jury about the case, its background, and what each side intends to prove, but it is not evidence. *Commonwealth v. Nelson*, 311 Pa.Super. 1, 12, 456 A.2d 1383, 1389 (1983). During an opening statement, a district attorney's remarks must "be fair deductions from the evidence the Commonwealth in good faith expects to develop, not merely assertions intended to inflame the passions of the jury." *Commonwealth v. Hughes*, 477 Pa. 180, 187, 383 A.2d 882, 886 (1978). The district attorney need not conclusively establish all statements made during the opening remarks, but a good-faith reasonable basis must exist to believe that a particular fact will be established. *Commonwealth v. Farquharson*, 467 Pa. 50, 64, 354 A.2d 545, 552 (1976). A mistrial, however, will be appropriate if the prosecutor's remarks have the unavoidable effect of rendering the jury incapable of an objective judgment. *Commonwealth v. Yohn*, 271 Pa.Super. 537, 541, 414 A.2d 383, 385–86 (1979).

In the present case, the assistant district attorney during his opening remarks referred to appellant as a "bum," and said appellant "did nothing for two and a half years except to do drugs." *See* N.T. at p. 8. Defense counsel objected and moved for a mistrial. The trial judge sustained defense counsel's objection to the word "bum," and cautioned the jury to disregard the statement in their deliberations. The judge did allow the reference to appellant's drug activity based on the assistant district attorney's representation that drug use would be established by the evidence as a

motive for appellant's actions. The prosecution, however, did not establish appellant's drug use as a motive, and the judge in his closing charge cautioned the jury to ignore any statements or testimony about appellant's drug use.

The prosecutor's statements about appellant's drug habits effectively prejudiced the jury against appellant, especially with the present media and political focus on the dangers inherent in drug use. During the entire trial, the jury heard the evidence with the knowledge that the prosecution believed appellant to be a heavy drug user. Furthermore, the assistant district attorney's description of appellant as a "bum" interjected into the case his personal views about appellant. During a trial, a prosecutor's personal opinions about a defendant are inappropriate since such statements are fundamentally inconsistent with a prosecutor's role as an administrator of justice. *Accord Commonwealth v. Evans*, 479 Pa. 100, 103, 387 A.2d 854, 855 (1978).

In a criminal trial, the prosecution may not address or introduce other criminal acts of the defendant unless the evidence is substantially relevant for a purpose other than demonstrating the accused's criminal character, such as the motive for the crime charged. *Commonwealth v. Martin*, 479 Pa. 63, 68, 387 A.2d 835, 838 (1978). In the present case, the prosecution introduced testimony concerning appellant's drug use to establish a motive for his actions.[3]

---

**3.** Twice during the questioning of Mr. Katz, the Commonwealth's primary witness, the assistant district attorney (A.D.A.) asked questions about appellant's drug use. In the first instance, the following question was asked:

Q. Did you have discussions with the defendant about his life while in Scottsdale, Arizona?
A. Yes, quite often. He just was semi-retired, not doing anything. Just living the life and getting high everyday smoking grass and really not doing anything.

N.T. at p. 29.

Later in this direct examination, a second exchange about appellant's drug use occurred. The A.D.A. asked whether the witness had ever seen appellant use controlled substances, and the witness said that during the prior two years he observed appellant use both cocaine and marijuana. In response to a further question by the A.D.A., the witness stated that he overheard appellant's discussion

The trial judge, however, ruled that insufficient evidence was introduced to establish appellant's drug use as a motive for his actions, and in his closing charge the judge cautioned the jury to disregard any references to appellant's drug use.

■ The jury, therefore, was exposed to improper testimony about appellant's illegal drug activity. But jury exposure to improper evidence about unrelated criminal activity need not necessarily result in a mistrial. An analysis of all the circumstances surrounding a case may demonstrate that any potential prejudice could be cured by cautionary instructions from the judge. *Commonwealth v. Richardson*, 496 Pa. 521, 526, 437 A.2d 1162, 1165 (1981). Two considerations are particularly pertinent. First, what was the nature of the reference? Second, was the testimony intentionally elicited by the assistant district attorney? *Id.*, 496 Pa. at 526–27, 437 A.2d at 1165. *See also Commonwealth v. Bowermaster*, 297 Pa.Super. 444, 451, 444 A.2d 115, 118 (1982).

■ In the present case, an analysis of the prosecution testimony in light of the above factors demonstrates the prejudice to the appellant was simply too great to be negated by a curative instruction. In considering the charges against appellant, the jurors were probably greatly influenced by the testimony concerning appellant's lifestyle, especially when the nation is presently focused on eradicating the drug problem. Believing the jury could ignore the illegal evidence because of the judge's instructions is not realistic. The judge's instruction was given in his closing charge, five days after the jurors initially heard the testimony. *See Commonwealth v. Ewell*, 318 Pa.Super. 397, 402, 465 A.2d 13, 15 (1983). In addition, the prosecution witness's statements were deliberately elicited by the assistant district attorney's questions to establish appellant's motive. The prosecutor failed to establish appellant's motive, but he

with a third party about establishing a drug manufacturing operation. *See* N.T. pp. 59–60.

was successful in having the jurors hear the damaging, improper testimony.

Judgment reversed. Case remanded for a new trial. Jurisdiction relinquished.